CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

12/06/2019

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| FREEMAN H. CAVE, *Plaintiff*, v. WELLS FARGO BANK, N.A., *et al.*, *Defendants.* | CASE NO. 3:19-cv-00024 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

## INTRODUCTION

Before the Court is the motion to dismiss for failure to state a claim, submitted by Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Federal National Mortgage Association ("Fannie Mae"). On May 6, 2019, Plaintiff Freeman Cave filed a complaint alleging three counts against Defendants Wells Fargo, Dyck-O'Neal, Inc., and Fannie Mae. Count I alleged violations by all three defendants of his automatic stay and discharge injunction resulting from his Chapter 7 bankruptcy proceedings. Count II alleged violations by Dyck-O'Neal of the Federal Debt Collection Practices Act ("FDCPA"). Count III alleged fraud under Virginia state law as against all three defendants. Dkt. 1 at 10–17.

On June 19, 2019, Defendants Wells Fargo and Fannie Mae filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), which Defendant Dyck-O'Neal did not join. Dkt. 19. Dyck-O'Neal filed its answer to Plaintiff's complaint on June 27, 2019. Dkt. 22. In his memorandum in opposition to Wells Fargo and Fannie Mae's motion to dismiss, Plaintiff requested that this case be transferred in its entirety to the bankruptcy court under Local Rule 3(a). On September 5, 2019, a hearing was held on the motion to dismiss. Dkt. 32.

For the foregoing reasons, the Court will grant Wells Fargo and Fannie Mae's motion to dismiss the claims against them pursuant to Rule 12(b)(6), dismissing Counts I and III as against those Defendants. The Court will decline to refer any claims to the Bankruptcy Court.

## I. ALLEGED FACTUAL BACKGROUND

In 2007, Plaintiff Freeman H. Cave obtained a home equity loan from Wells Fargo in the amount of $32,000, secured by a mortgage on Plaintiff's home located at 13426 Stonehouse Mountain Road, Culpeper, Virginia. Dkt. 1 at ¶¶ 9–10. In 2012, Plaintiff obtained another loan from Wells Fargo in the amount of $176,000, also secured by a mortgage against Plaintiff's home in Culpeper. *Id.* at ¶ 11. Sometime shortly after Plaintiff obtained the home equity loan, Wells Fargo sold the loan to Fannie Mae, while Wells Fargo continued to act as the loan's servicer and was the only entity with which Plaintiff interacted with regarding this loan. *Id.* at ¶ 13.

On March 13, 2013, Plaintiff filed for Chapter 7 Bankruptcy in the bankruptcy court for the Charlottesville Division of the Western District of Virginia (Bankruptcy Case No. 13-60549), listing both aforementioned loans as debts to be discharged in his petition. *Id.* at ¶¶ 14–15. Plaintiff further alleges that Wells Fargo was informed of Plaintiff's bankruptcy filing and did not file any documents objecting to the discharge of these loans. *Id.* at ¶¶ 16–17. On June 12, 2013, the bankruptcy court entered its order discharging Plaintiff's debts, including the loans at issue in Plaintiff's complaint. *Id.* at ¶ 19.

Plaintiff continued to reside in his home at 13426 Stonehouse Mountain Road for several years after the entry of the bankruptcy court's discharge order. *Id.* at ¶ 22. During this time, Plaintiff "voluntarily submitted monthly mortgage payments to Wells Fargo, following the terms of his original mortgage agreement with them." *Id.* at ¶ 23.[1] Wells Fargo voluntarily accepted

---

[1] The allegations in the Complaint do not make it clear whether Defendants solicited such payments or whether Plaintiff submitted them unsolicited.

2

these mortgage payments during this period. Despite the payments, Plaintiff alleges that Wells Fargo had not entered into any formal agreement with Plaintiff regarding these payments or the status of the mortgage against the home. *Id.* at ¶ 23. In 2016, Plaintiff stopped making these monthly mortgage payments to Wells Fargo, and he moved out of his home at Stonehouse Mountain Road in late 2016, advising Wells Fargo of the same.[2] *Id.* at ¶¶ 24–25. Plaintiff further alleges that, after he left his home, Wells Fargo continued to send Plaintiff loan statements and communicate with Plaintiff in order to collect on them. *Id.* at ¶ 26.

Plaintiff alleges that, in May 2017, Wells Fargo sent him a letter advising him the bank was willing to accept a deed in lieu of foreclosure to avoid foreclosing on his home at Stonehouse Mountain Road.[3] *Id.* at ¶ 27(a). Plaintiff alleges that this letter stated Wells Fargo would "release [him] from [his] obligation to repay [his] mortgage balance" and that the value of the home was sufficient to cover the remaining balance on his mortgage loan. *Id.* Plaintiff further alleges that Wells Fargo offered to pay $6,000 to the Wells Fargo Home Equity division, cancelling the remaining balance on the home equity loan. *Id.* at ¶ 27(b). Lastly, Plaintiff alleges that, as a precondition for Wells Fargo to take these steps, Plaintiff was required to sign a promissory note with Dyck-O'Neal, promising to pay $28,254. *Id.* at ¶ 27(c). This promissory note was, as Plaintiff alleges, for the purpose of compensating Fannie Mae for "losses they would suffer relating to [Plaintiff's] mortgage loan if the deed in leu of foreclosure was executed." *Id.* at ¶ 29. Plaintiff, at the time, did not take any actions challenging this letter, alleging that he was under the belief that Wells Fargo was "acting in a manner which was permitted by law." *Id.* at ¶ 28. Plaintiff

---

[2] It is not clear from the facts alleged whether Plaintiff sold his home, ceased ownership of it, or merely ceased residing in it.

[3] Plaintiff does not include the date of this letter in his complaint, but he does note in his memorandum in opposition to the motion to dismiss under 12(b)(6), filed by Wells Fargo and Fannie Mae, that this letter was sent on May 9, 2017. Dkt. 26 at 5. Plaintiff has not amended his complaint to include this date.

3

admits that, on an unspecified date, he agreed to the terms of Wells Fargo's May 2017 letter, *id.* at ¶ 30, signing a promissory note to Dyck-O'Neal in the amount of $28,200. This note required Plaintiff to make payments to Dyck-O'Neal for $235 per month for ten years. *Id.*

Plaintiff alleges that, on August 15, 2017, Wells Fargo sent him a letter asking, contrary to the terms of Wells Fargo's May 2017 letter, that Plaintiff arrange to pay $6,000 to Wells Fargo in order to settle the outstanding balance on his home equity loan. *Id.* at ¶ 32. Although Plaintiff neither responded to this letter, nor paid the amount requested, he received from Wells Fargo a Certificate and Affidavit of Satisfaction relating to the home equity loan. *Id.* at ¶ 33. This document, dated September 19, 2017, stated that the home equity loan "has been paid in full, and the lien therein created and retained is hereby released." *Id.*

At some undisclosed point in 2018, Plaintiff began missing his payments on his promissory note to Dyck-O'Neal. *Id.* at ¶ 35. Plaintiff alleges that, as a result, Dyck-O'Neal began contacting Plaintiff to "attempt to pressure him into paying the amounts set out in the Promissory Note." *Id.* There is no indication in the Complaint as to how often and on what dates Dyck-O'Neal contacted Plaintiff. Plaintiff also alleges that Dyck-O'Neal "put information on [Plaintiff's] credit reports indicating that he was seriously behind on these debts," which adversely impacted his credit score and his ability to obtain credit. *Id.* at ¶ 36.

At some undisclosed time, after seeking legal assistance, Plaintiff's counsel contacted Wells Fargo about this matter. Wells Fargo agreed that "because of the bankruptcy, Plaintiff Cave did not owe them anything on either his home equity or his home mortgage loan." *Id.* at ¶ 37. The Complaint alleges that Plaintiff and Wells Fargo further agreed that he did not have to pay any money to Dyck-O'Neal. *Id.* Plaintiff further contends that the parties arranged for Dyck-O'Neal to refund the sums that Plaintiff had previously paid that company under Plaintiff's promissory

note. *Id.* at ¶ 37.

Plaintiff filed this complaint on May 6, 2019, seeking compensatory damages, punitive damages, and any other relief that the Court deems just and proper. Dkt. 1 at 17. On June 19, 2019, Wells Fargo and Fannie Mae filed a joint motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This matter is now fully briefed and ripe for disposition.

## II. ANALYSIS

Plaintiff has requested that this Court transfer this case to the Bankruptcy Court, pursuant to its authority under 28 U.S.C. § 157(a) and Local Rule 3(a), despite his choice to file the action before this Court. Based on the nature of the Court's reasoning for the dismissal of the claims against Wells Fargo and Fannie Mae in Counts I and III of the Complaint, this Memorandum Opinion declines to analyze those claims' eligibility for referral as against any of the three defendants in this case. The Court will consider, however, whether Count II against Dyck-O'Neal—which has not joined Wells Fargo and Fannie Mae in their motion to dismiss under Fed. R. Civ. P. 12(b)(6)—should be referred to the Bankruptcy Court. The Court will then address the claims for review pursuant to Wells Fargo and Fannie Mae's motion to dismiss.

### A. Referral to Bankruptcy Court Under Local Rule 3(a)

28 U.S.C. § 1334(b) grants federal district courts original, but not exclusive, jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Pursuant to 28 U.S.C. § 157(a), district courts may refer such proceedings to the bankruptcy judges for their respective districts. Making use of this statutory authority, the United States District Court for the Western District of Virginia has promulgated Local Rule 3(a), which dictates that "all cases under Title 11 of the United States Code and all proceedings arising under Title 11, or

arising in or relating to a case under Title 11, are referred to the bankruptcy judges for this district." W.D. Va. Gen. R. 3(a).

Federal bankruptcy courts cannot exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) in order to hear claims that do not otherwise qualify for jurisdiction under 28 U.S.C § 1334(b) and 28 U.S.C. § 157. The jurisdictional grant in § 1334 and § 157 negates a bankruptcy court's exercise of jurisdiction of a supplemental non-federal claim in instances where that claim has no impact on the bankruptcy estate." *In re Harlan*, 402 B.R. 703, 713 (Bankr. W.D. Va. 2009) (quoting *Enron Corp. v. Citigroup, Inc.* (*In re Enron Corp.*), 353 B.R. 51, 61 (Bankr. S.D.N.Y. 2006)).

Congress has not delineated the scope of bankruptcy courts' "related to" jurisdiction under 28 U.S.C. § 1334(b). But the Fourth Circuit has adopted the following test: "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and [it] in any way impacts upon the handling and administration of the bankruptcy estate.'" *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 836 (4th Cir. 2007) (quoting *Owens-Ill., Inc. v. Rapid Am. Corp.* (*In re Celotex Corp.*), 124 F.3d 619, 625–26 (4th Cir. 1997)). At least in Chapter 11 bankruptcy's post-confirmation context, the Fourth Circuit has found that a "close nexus" must exist between the claim and the original bankruptcy case in order for the two to be considered "related" for purposes of jurisdiction.[4] A mere factual nexus, however, is insufficient; the later proceeding must serve "a bankruptcy administration purpose on the date the bankruptcy court exercises that jurisdiction." *Valley Historic Ltd. P'ship*, 486 F.3d at

---

[4] While the Fourth Circuit appears not to have yet applied the "close nexus" test to the Chapter 7 context, the U.S. Supreme Court in its opinion in *Celotex Corp. v. Edwards*, 514 U.S. 300, 310 (1995) remarked that the jurisdiction of bankruptcy courts is even broader in a Chapter 11 reorganization than a Chapter 7 liquidation, despite the statutory grant of authority in § 157(b)(1) making no distinction between the two. Therefore, while the "close nexus" test in *Valley Historic* is likely more inclusive than what might be applied in the Chapter 7 context, it provides a helpful starting point for the analysis of the outer limits of the bankruptcy court's jurisdiction. *See In re Harlan*, 402 B.R. at 713 & n.6 (applying the "close nexus" test in the Chapter 7 context).

837. Claims that arise post-petition cannot be part of the bankruptcy estate, and so have "no conceivable effect on the debtor's bankruptcy estate." *In re Harlan*, 402 B.R. at 712.

Plaintiff's FDCPA claim asserted against Dyck-O'Neal for debt-collection practices that took place after the discharge order was entered is not "related to" Plaintiff's Chapter 7 bankruptcy proceeding for purposes of § 157(b)(1). *See, e.g., In re Harlan*, 402 B.R. at 712; *In re Gates*, No. 04–12076–SSM, 2004 WL 3237345, at *7 (Bankr. E.D. Va. 2004). The bankruptcy judge in *Harlan*—noting that numerous bankruptcy courts had dealt with the same question—found that

> any recovery on a post-petition claim under the FDCPA is not property of the bankruptcy estate under [the Bankruptcy Code] because the claim did not exist as of the commencement of the case. Thus, the disposition of a post-petition FDCPA claim will have no conceivable effect on a debtor's bankruptcy estate.

*In re Harlan*, 402 B.R. at 712; *see also In re Ohnmacht*, No. 09-08106-8, 2017 WL 5125531, at *13 (Bankr. E.D.N.C. Nov. 3, 2017) (applying the same principle).

The United States Bankruptcy Courts for the Eastern and Western Districts of Virginia have both found that the jurisdictional bar will not be met in FDCPA claims—even where the FDCPA claims are based on "the same conduct that is alleged to have violated the automatic stay and discharge injunction." *In re Harlan*, 402 B.R. at 713 (citing *In re Gates*, 2004 WL 3237345, at *7). Since such claims will not benefit the bankruptcy estate or vindicate any rights protected by the Bankruptcy Code, both courts have found that they could not possibly "relate to" a proceeding under title 11, as provided under 28 U.S.C. § 157(b)(1). *Id*. The reasoning and holdings of those opinions are persuasive, and they lead this Court to hold that it has no ability to refer the claim.

## B. Motion to Dismiss[5]

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Still, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

---

[5] As indicated, Count II of Plaintiff's complaint targets only Dyck-O'Neal, which has not joined Wells Fargo and Fannie Mae in their motion to dismiss, nor has it filed its own. Therefore, this Section will not analyze whether Plaintiff failed to state a claim on which relief could be granted against Dyck-O'Neal, addressing only Counts I and III of the complaint as they relate to Wells Fargo and Fannie Mae.

1. Count I: Violation of the Bankruptcy Court's Discharge Order

Several courts of appeals have found that there exists no private right of action for a violation of a bankruptcy court's automatic stay and discharge injunction pursuant to 11 U.S.C. § 524(a)(2), as has this Court. *See, e.g.*, *Walls v. Wells Fargo Bank, N.A.*, 27 F.3d 502, 509 (9th Cir. 2002); *Fox v. Zale Delaware, Inc.*, 239 F.3d 910, 917 (7th Cir. 2001); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000); *see also Lovegrove v. Ocwen Loan Servicing, LLC*, Case No. 7:14-cv-00329, 2015 WL 5042913, at *7 (W.D. Va. Aug. 26, 2015) ("[T]he Bankruptcy Code does not provide for a private right of action for a violation of the discharge injunction. Rather, the code provides a remedy through the bankruptcy court's civil contempt power. Thus, a debtor who believes a creditor has violated the discharge injunction may move to reopen the bankruptcy proceeding and ask the bankruptcy court to determine whether the injunction was indeed violated.") (internal citations omitted); *Pearson v. Bank of America*, Case No. 3:12-cv-00013, 2012 WL 2804826, at *4 (W.D. Va. July 10, 2012) (stating that "there exists no private right of action for a violation of § 524(a)(2)").

Plaintiff's sole remedy for such alleged violations is to file a civil contempt motion in the bankruptcy court that entered the discharge order, which—to be clear—may only be filed in the bankruptcy court that issued the injunction. *In re Debs*, 158 U.S. 564, 594–95 (1895) (stating that the "power of a court to make an order carries with it the equal power to punish for a disobedience of that order . . . . To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceeding of half its efficiency . . . . [therefore] the sole adjudication of contempts, and the punishments thereof [belong] exclusively . . . to each respective court"); *Jones v. CitiMortgage, Inc.*, 666 F. App'x 766, 774 (11th Cir. 2016); *Alderwoods Grp., Inc., v. Garcia*, 682 F.3d 958, 970–71 (11th Cir. 2012); *Waffenschmidt v. MacKay*, 763 F.2d 711,

716 (5th Cir. 1985); *Stiller v. Hardman*, 324 F.2d 626, 628 (2d Cir. 1963) (stating that "[v]iolation of an injunctive order is cognizable in the court which issued the injunction"); *Lovegrove*, 2015 WL 5042913, at *6 (stating that "Lovegrove's remedy lies with the bankruptcy court's contempt power").[6]

The Court sees no value in referring a claim for which there is no cause of action, and neither Local Rule 3(a) nor any statute compels it do so. Consequently, the Court will grant Defendants' motion to dismiss as to Count I.

2. Count III: Fraud

Under Virginia law, a party pursuing a claim of common law fraud[7] must prove the following elements by clear and convincing evidence: "(1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) damages resulting from that reliance." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 826 (4th Cir. 1999) (citing *Van Deusen v. Snead*, 441 S.E.2d 207, 209 (Va. 1994)); *Jared and Donna Murayama 1997 Trust v. NISC Holdings, LLC*, 727 S.E.2d 80, 86 (Va. 2012) (citing *Metrocall of Delaware, Inc. v. Continental Cellular Corp.*, 437 S.E.2d 189, 193 (Va. 1993)) ("But to establish fraud, it is essential that the defrauded party demonstrates the right to reasonably rely upon the misrepresentation.").

Fed. R. Civ. P. 9(b) provides a heightened pleading standard for allegations of fraud. In

---

[6] Plaintiff's counsel acknowledges that this Court's decision in *Lovegrove* weighs against his case, but nonetheless he pushes forward with his position that "the law permits such claims to be heard by either the District Court or the Bankruptcy Court," without citing any authority whatsoever to support this jurisdictional argument. Dkt. 26 at 8.

[7] Plaintiff's complaint does not make it clear which species of fraud is alleged, but the factual allegations suggest that it is actual fraud. Dkt. 1 at ¶ 34; s*ee* Dkt. 26, at 10 ("Because Wells Fargo knew this debt had been discharged in bankruptcy, it was aware that these sums were not in fact owed and that they had no right to collect them."). Virginia law does provide a cause of action for constructive fraud, which only requires that a false representation be made innocently or negligently. *Henderson v. Henderson*, 495 S.E.2d 496, 499 (Va. 1998). But given this Court's findings as to Plaintiff's reasonable reliance and whether Plaintiff relied on a representation of a material fact, the outcome would be no different as between a claim for constructive fraud and actual fraud.

making such allegations, the plaintiff must plead with particularity the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby," *United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 280 (4th Cir. 2014) (internal citations omitted); *Allen v. FCA US LLC*, Case No. 6:17-cv-00007, 2017 WL 1957068, at *3 (W.D. Va. May 10, 2017), but may plead defendant's "[m]alice, intent, knowledge, and other conditions of a person's mind" under Rule 8's general pleading standard, *Iqbal*, 556 U.S. 686. Rule 9(b) requires the plaintiff, more specifically, to allege "the who, what, when, where and how of the alleged fraud." *Ahumada*, 756 F.3d at 280 (internal citations omitted).

   a. *Reasonable Reliance*

It is insufficient for Plaintiff's factual allegations to support a finding that Plaintiff simply relied on Defendants' alleged misstatements—such reliance must also be objectively reasonable. *Sweely Holdings, LLC v. SunTrust Bank*, 820 S.E.2d 596, 605 (Va. 2018) (stating the court must find "if such allegations and inferences are true, a reasonable jury could find the reliance justifiable based upon clear and convincing evidence."); *Horner v. Ahern*, 153 S.E.2d 216, 219 (Va. 1967). The Supreme Court of Virginia has made it clear that reasonable reliance means reasonable investigation:

> "The law is well settled that where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them. Therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust in the hands of one whose interest is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence."

*Horner*, 153 S.E.2d at 219*; see Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999) ("The touchstone of reasonableness is prudent investigation."); *Jared & Donna Murayama 1997 Trust v. NISC Holdings, LLC*, No. CL–2010–8635, 2011 WL 7575011, at *5 (Va.

11

Cir. Ct. Feb. 14, 2011), *aff'd* 727 S.E.2d 80 (Va. 2012) (stating that plaintiff's "trust[ing] itself in the hands of [d]efendants instead of demanding information and investigation as a reasonable person would have" constituted unreasonable reliance).

The Court notes at the outset that Plaintiff's factual allegations supporting the claim that Defendant *knowingly* defrauded him undercuts his allegations of reasonable reliance. He argues that Defendants had knowledge of his post-discharge balance, Dkt. 1 at ¶ 34, presumably because Defendants were given notice of his Chapter 7 bankruptcy petition, *id.* at ¶ 16, and they would have received subsequent notice of the discharge order entered in that proceeding. That may be true, but Plaintiff can hardly escape a finding that he himself had knowledge of the discharge order on the same basis. To hold otherwise would be to find that Plaintiff was either unaware of the discharge order entered in his own bankruptcy case or that he otherwise had no access to it.

Despite this, Plaintiff argues that his reliance on Defendants' alleged misstatement and his failure to investigate the same is "understandable," Dkt. 26 at 10, because—unlike the Defendants—he did not have much experience with "the law relating to mortgages or to bankruptcies," Dkt. 1 at ¶ 57.[8] But Plaintiffs' claim to "understandable" reliance does not equate to "reasonable reliance"; rather, the question of whether a plaintiff's reliance was reasonable is an objective one under Virginia law. *Horner*, 153 S.E.2d at 219 (using a reasonably prudent person as the relevant measure). Given this, Plaintiff's personal lack of familiarity cannot be credited when considering whether his reliance was reasonable.

And, in fact, Plaintiff's arguments about his personal lack of familiarity with bankruptcy belie his attempt to meet a subjective standard of reliance rather than an objective one, as Virginia

---

[8] Plaintiff does not indicate whether he is uniquely unfamiliar with "the law of bankruptcy and mortgages" or whether he is just as unfamiliar as the reasonably prudent person. Regardless, this is of no matter. As this Memorandum Opinion goes on to explain, the law is "equally within the knowledge of all parties" in Virginia. *Hicks v. Wyn*, 119 S.E. 133, 137 (Va. 1923).

law requires. This is because Plaintiff—despite his lack of familiarity—alleges that he *did* inquire with Wells Fargo as to whether he actually owed the amounts indicated in the May 2017 letter, given the discharge order from his Chapter 7 proceeding. Dkt. 1 at ¶ 37. Indeed, this inquiry resulted in Wells Fargo's agreement that, as a result of his bankruptcy, Plaintiff did not owe anything, and he was refunded the amounts he paid. *Id.* There are no allegations in the Complaint that suggest this was anything but Plaintiff's first inquiry into the matter, and Plaintiff's counsel acknowledged as much during the hearing on this motion to dismiss, Dkt. 40 at 16 ("Now, it is true that Mr. Cave did not confront Wells Fargo during these interactions with the fact of the bankruptcy discharge.").

Although Plaintiff had to go through the trouble and expense to obtain legal counsel, the Court cannot characterize Plaintiff's reliance on Wells Fargo and Fannie Mae's alleged misstatement as reasonable under an objective standard. As indicated, Virginia law requires individuals to engage in reasonable inquiries before they can be said to reasonably rely on the statements of others. *See, e.g.*, *Hitachi Credit Am. Corp.*, 166 F.3d at 629 ("The touchstone of reasonableness is prudent investigation."). To put it succinctly: the reasonably prudent person engages in a reasonable investigation. And, if nothing else, a reasonable person in possession of a discharge order, which plainly stated "the chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged," Dkt. 20, Ex. A at 2, would engage in an inquiry when a creditor attempts to collect a discharged debt.[9] This is especially true where a plaintiff has dealt with those who have opposing interests or who are otherwise transacting at arm's length, such as

---

[9] While Plaintiff failed to attach the discharge order from his chapter 7 bankruptcy proceedings to his complaint, it is a document that is integral to the complaint, the authenticity of which is not in dispute. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (stating that courts "may consider . . . documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.").

the parties in this case, who were engaging in loss-mitigation procedures after the plaintiff-lendee had undergone bankruptcy proceedings. *See Bank of Montreal*, 193 F.3d at 829 (stating that a failure to disclose information is generally not actionable as fraudulent concealment where the parties are engaging in an arm's length transaction). Rather than engage in even the slightest inquiry at the outset, Plaintiff obliged Defendants' attempts to collect on the discharged debt, inquiring only later.

Even if one were to accept that the reasonably prudent person is less familiar with bankruptcy matters than the Defendants, the law is understood to be "equally within the knowledge of all parties" in Virginia. *Hicks v. Wyn*, 119 S.E. 133, 137 (Va. 1923). And yet, Plaintiff's filings make clear that he was relying on Defendants' representations as to the legal effect of the discharge order issued in his Chapter 7 proceedings:

> The Complaint alleges that the Defendants . . . deceived Plaintiff Cave by leading him to believe that signing [the] Promissory Note [pursuant to the May 2017 letter] and making the payments it provided for was something he was required to do. That was false. He was not required to do this. [There was no such requirement, because the debts] had been discharged in bankruptcy, and so the Plaintiff did not, in fact, owe Wells Fargo this money, a fact that Wells Fargo knew. Because Wells Fargo knew this debt had been discharged in bankruptcy, it was aware that these sums were not in fact owed and that they had no right to collect them.

Dkt. 26 at 10. (citing Dkt. 1 at ¶ 62). Plaintiff's attempts to refer to the discharge order's impact on his financial obligations as a "fact" are in vain. Plaintiff's counsel seems to later acknowledge as much in his response to Dyck-O'Neal's supplemental response in support of Wells Fargo and Fannie Mae's motion to dismiss: "Plaintiff Cave relied on these claims and signed a Promissory Note promising the pay the money, unaware of the fact that he had no legal obligation to do so." Dkt. 39 at 4.

A statement as to the discharge order's impact on Plaintiff's financial obligations is a statement relating to a court order's effect on the rights and obligations of the parties, and so it is

14

more appropriately framed as the as a statement of law. *See In re Chionis*, No. ADV SA 10-01591-ES, 2013 WL 6840485, at *5 (B.A.P. 9th Cir. Dec. 27, 2013) (referring to effect of a discharge order on the ability to collect on a loan as its "legal effect"); *In re Nash*, 464 B.R. 874, 880 (B.A.P. 9th Cir. 2012) (describing § 524(a) as prescribing the "legal effect" of the discharge order in Chapter 7 proceedings). At least under Virginia law, Plaintiff's reliance on Defendants' representations as to the legal effect of his own discharge order cannot be considered reasonable. *Hicks*, 119 S.E. at 136–37 ("A representation of what the law will or will not permit to be done is one on which the party to whom it is made has no right to rely; and if he does so, it is his folly, and he cannot ask the law to relieve him from the consequences.").

For the foregoing reasons, this Court concludes that Plaintiff has not plausibly alleged reasonable reliance on Defendants' alleged misstatements. *Sweely Holdings, LLC*, 820 S.E.2d at 605. As Plaintiff has failed to allege reasonable reliance, the Court declines to analyze whether Plaintiff has alleged facts that support the other elements of an action for common law fraud or whether his complaint has satisfied the heightened pleading requirements of Rule 9(b). The Court will grant Defendants' motion to dismiss as to Count III of the Complaint.

## CONCLUSION

The Court declines Plaintiff's tacit invitation to treat Count I as a motion to hold the Defendants in civil contempt for violation of an injunction that was never issued by this Court, and the foregoing analysis makes clear that courts have not treated 11 U.S.C. § 524(a) as creating a private cause of action for such violations. Further, Plaintiff has failed to allege facts that would allow a reasonable jury to find that Defendants Wells Fargo and Fannie Mae committed fraud against him, as alleged in Count III of his Complaint. For the foregoing reasons, the Court will grant Defendants Wells Fargo and Fannie Mae's motion to dismiss the claims against them

15

pursuant to Rule 12(b)(6).  A separate order will issue.

ENTERED this day of __6th__ December, 2019.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE